08 JUN 30 PM 1:35

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | MAGISTRATE CASE NO. '08 MJ 1999 |
| Plaintiff,                          ) | **MATERIAL WITNESS COMPLAINT**: |
| v.                                  ) | Title 18 U.S.C. § 3144 |
| NOEMI LOPEZ-MEDINA                  ) | |
| LUIS SANCHEZ-CAMPOS                 ) | |
| Defendants.                         ) | |

The undersigned Complainant, being duly sworn, states:

Beginning on an unknown date and continuing through May 16, 2008, within the Southern District of California, and elsewhere, witnesses Noemi Lopez-Medina and Luis Sanchez-Campos possessed and possess information and have testimony material to a federal indictment now pending in the United States District Court for the Southern District of California, and whose whereabouts at the time of trial will be a foreign country, or unknown; and therefore, in accordance with Title 18, United States Code, Section 3144, a warrant for the arrest of the witnesses should be issued, and the witnesses should be detained until their testimony can be secured.

And the complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

MICHAEL J. POZANC
Special Agent,
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence on June 30, 2008.

HONORABLE BARBARA L. MAJOR
Magistrate Judge

Affidavit in Support
of Material Witness Complaint For:

**Noemi Lopez-Medina**
**Luis Sanchez-Campos**

MICHAEL J. POZANC, being duly sworn, deposes and says:

1. I am employed as a Special Agent of the Federal Bureau of Investigation (FBI) and have been so for more than eleven years. I am currently assigned to the San Diego Division's Border Corruption Task Force and I investigate alien and/or narcotic smuggling organizations who utilize law enforcement officers, assigned to various ports of entry in San Diego, to facilitate their smuggling activities which is a violation of Title 8, United States Code, Section 1324; Title 18, United States Code, Section 201; Title 21, United States Code, Section 952. As a Special Agent for the FBI, I have participated in, and led, numerous corruption investigations involving Tijuana, B.C., Mexico based smuggling organizations. I have received formal and informal training provided by the FBI and other federal agencies.

2. This affidavit is made in support of a material witness complaint and arrest warrants, pursuant to Title 18, United States Code, Section 3144, for Noemi Lopez-Medina and Luis Sanchez-Campos. This application seeks the witnesses' detention so that their testimony may be secured for trial in the Southern District of California.

3. On May 16, 2008, a two count federal complaint was filed in the Southern District of California, Magistrate Case No. 08MJ1534, charging Luis Francisco Alarid ("Alarid"), a Department of Homeland Security, Customs and Border Protection Officer, with: (a) Count 1 - conspiracy to import marijuana, in violation of Title 21, United States Code, Section 952, 960 and 963; and (b) Count 2 - conspiracy to bring in aliens for financial gain, in violation of Title 18, United States Code, Section 371, and Title 8, United States Code, Section 1324 (a) (2) (B) (ii).

4. On February 11, 2008, I received intelligence information that a Tijuana, B.C., Mexico, based smuggling organization was: utilizing a corrupt border official at the Otay Mesa Port of Entry to facilitate their smuggling ventures; usually conducting those smuggling ventures between 12:00am and

12:30am; and placing tape over certain digits of the license plates of the load vehicles being used in their smuggling ventures (in order to elude inspection by an electronic license plate reader).

5. On February 14, 2008, while conducting surveillance at the Otay Mesa Port of Entry, a gray minivan was observed entering the United States through lane number 4 at the Otay Mesa Port of Entry at approximately 12:15am. The vehicle had tape covering the first and last digits of the license plate. The inspector assigned to lane number four was Alarid. At approximately 12:26am, a tan/brown minivan was observed entering the United States through lane number three at the Otay Mesa Port of Entry. This vehicle also had tape on the certain digits of the license plate. The inspector assigned to lane number three was Alarid. The vehicles were followed to two separate locations in Chula Vista, California, where the brown van was ultimately stopped by the Chula Vista Police Department and it was discovered to contain ten illegal aliens.

6. On March 6, 2008, while conducting surveillance at the Otay Mesa Port of Entry, a white minivan was observed entering the United States through lane number four at approximately 12:56am. The vehicle had tape covering the first and last digits of the license plate. All that was visible was "WDA 83." The inspector assigned to lane number 4, Alarid, observed that another inspector was approaching to relieve him. As a result, Alarid hurriedly allowed the vehicle to enter the United States with no inspection. The vehicle was ultimately followed to a house on Estelle Street in San Diego. At approximately 12:59am, I observed a red minivan enter the United States through lane number three. This vehicle had a commercial license plate on the vehicle and the inspector assigned to lane number 3, Alarid, allowed the vehicle to enter the United States with no inspection. The red van was ultimately approached by the Chula Vista Police Department as a result of a concerned citizen complaint. The vehicle was found to contain 263 pounds of marijuana and four illegal aliens.

7. On March 13, 2008, while conducting surveillance at the Otay Mesa Port of Entry, a white minivan was observed entering the United States through lane number three at approximately 12:57am. The vehicle did not have tape covering the first and last digits of the license plate, however, the same middle digits of "WDA 83," were observed on the license plate. The inspector assigned to lane number three, Alarid, allowed the vehicle to enter the United States with no inspection. The vehicle was ultimately stopped by the San Diego Police Department and discovered to contain 173 pounds of

marijuana and 19 illegal aliens. The driver of the vehicle was Cesar Alarid Rebolledo, who was later determined to be the uncle of Alarid.

8. On May 3, while conducting surveillance at the Otay Mesa Port of Entry, Alarid was observed allowing three pick-ups and a sedan to enter the United States through his inspection lane with no inspection. Alarid admitted all four of the vehicles into the United States within a one minute time period. The vehicles were subsequently followed from the Otay Mesa Port of Entry and were observed driving in tandem (one behind the other) to a house located at 226 Ash Street, Chula Vista, California. After the load vehicles arrived at the residence, they were observed idling near a rear gate to the residence. After observing several vehicles come and go from the residence, including the load vehicles, the United States Border Patrol obtained a consent to search the premises, where they discovered 40 illegal aliens, 30 of which were stowed away in an 8 x 12 room. Among them were material witnesses Noemi Lopez-Medina and Luis Sanchez-Campos.

9. On May 16, 2008, Alarid allowed four vehicles, two of which were the same vehicles he allowed entrance on May 3, 2008, to enter the United States. Customs and Border Protection officers stopped two of the four vehicles and discovered illegal aliens and marijuana within the vehicles.

10. On May 16, 2008, Alarid was arrested without incident as part of Magistrate Complaint No. 08MJ1534.

11. On June 3, 2008, Alarid was indicted by a Federal Grand Jury in the Southern District of California.

12. Material witnesses Noemi Lopez-Medina and Luis Sanchez-Campos agree that they are citizens and nationals of Mexico and were illegally present in the United States. They admit to entering the United States illegally. They admit to not having any legal documents to remain in the United States. The material witnesses further state that they paid between $4,500.00 and $5,000.00 (U.S.) to be smuggled into the United States on May 3, 2008, and that a person named FNU LNU, aka, Querendon had expressed to them that it was "guaranteed" or a "sure thing" because the smuggling organization was working with a "Migra" or inspector. The material witness Noemi Lopez-Medina was positioned near the gas pedal of the load vehicle as it began its journey toward the inspection booths. When the material witness Noemi Lopez-Medina asked the load driver what they were waiting for, the load driver informed

the material witness Noemi Lopez-Medina that they were waiting on the inspector's mother to inform them which lane to use. Shortly thereafter, the material witness Noemi Lopez-Medina overheard a females voice on the radio feature of the load driver's Nextel cellular telephone indicate that the vehicles should go and indicated a lane number for them to travel. The material witnesses recall the vehicle traveling a short while with a number of stops and starts. After a series of stops and starts, the material witness Noemi Lopez-Medina then heard the load driver exclaim that they had made it.

13. I believe that, based upon the facts set out above, there is no condition or combination of conditions that would reasonable assure the appearances of Noemi Lopez-Medina and/or Luis Sanchez-Campos. Accordingly, I respectfully request that a complaint and arrest warrants be issued for Noemi Lopez-Medina and Luis Sanchez-Campos.

WHEREFORE your affiant prays that the Court issue material witness warrants for Noemi Lopez-Medina and Luis Sanchez-Campos, and that they be imprisoned or bailed as the case may be.

MICHAEL J. POZANC
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence on June 30, 2008,

HONORABLE BARBARA L. MAJOR
Magistrate Judge